IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Laura Burnside; Polly Semallie; and Pauline White, | ) ) ) |
| Plaintiffs, | ) ) No. CV-15-08233-PCT-PGR |
| vs. | ) ) ORDER |
| Office of Navajo and Hopi Indian Relocation, | ) ) ) |
| Defendant. | ) ) |

Among the motions pending before the Court are Plaintiffs' Motion for Summary Judgment (Doc. 48) and Defendant's Cross-Motion for Judgment (Doc. 53), both of which pertain solely to the plaintiffs' First Claim for Relief, entitled "APA Violations," in their Second Amended Complaint for Judicial Review ("SAC") (Doc. 19). Having considered the parties' memoranda in light of the Certified Administrative Record ("CAR"), the Court finds that the defendant's APA cross-motion should be granted and that the plaintiffs' APA motion should be denied.[1]

---

[1]

No party has requested oral argument on these APA-related motions and the Court concludes that oral argument would not aid the decisional process. The Court notes that it discusses herein only those arguments raised (continued...)

## Background

The plaintiffs in this action, Laura Burnside, Polly Semallie, and Pauline White,

all of whom are members of the Navajo Nation, are seeking review under the

Administrative Procedure Act ("APA") of the final administrative decisions of the

Office of Navajo and Hopi Indian Relocation ("ONHIR") denying their requests to

waive the deadline for filing appeals of ONHIR's notices denying their claims for

relocation benefits.[2]

The administrative appeals of all of the plaintiffs were initially denied because

they were not timely filed. Pursuant to 25 C.F.R. § 700.13, ONHIR has the

discretion to waive the time limit for filing an appeal if it determines, on a case by

case basis, that the waiver is "in the best interest of individual Indian applicants, the

Commission [ONHIR], and the United States."[3] Under ONHIR's original Policy

[1](...continued)
by the parties that the Court deems necessary for the resolution of the pending

motions.

[2]

ONHIR was originally named the Navajo Hopi Indian Relocation
Commission ("NHIRC"). For the sake of simplicity, the Court will refer to the federal

agency as ONHIR even if NHIRC was the name of the agency on the date being
referred to.

[3]

The regulation states in its totality:

(a) Any time limit specified for the filing of a claim or an appeal under the

regulations in this part may, on a case by case basis, be extended by the
Commission.

(b) The Commission may waive any requirement of these regulations in this
part if such requirement is not required by law and the Commission finds such

waiver or exception to be in the best interest of individual Indian applicants,

the Commission, and the United States. Any request for a Commission
waiver shall be submitted in writing to the Commission and shall be justified

(continued...)

Memorandum No. 9, ONHIR refused to consider any applicant's request for a waiver of the appeal time limit if that applicant had personally signed a return receipt for ONHIR's eligibility denial notice but failed to timely file an appeal; none of the plaintiffs in this action qualified for a waiver under this original policy.

Effective February 7, 2005, ONHIR issued its Policy Memorandum No. 9 (Revised) ("Revised Policy 9"), wherein it provided that it "may consider requests for waiver of the time limit for filing an appeal of the Notice of Denial of Relocation Benefits pursuant to 25 C.F.R. § 700.13(a) from those applicants from whom the Office received personally signed return receipts but who did not timely file an appeal." The revised policy states that waiver requests will be "considered on a case by case basis to determine whether good cause exists for missing a deadline." It also states that applicants are required to demonstrate reasonable good cause explaining the circumstances which caused their failure to take timely action. It further states, in its Paragraph 3, that ONHIR will consider seven factors in determining whether an appeal time limit should be extended under the reasonable good cause standard.[4]

_____

[3](...continued)
on a case by case basis.

[4]

Paragraph 3 of the Revised Policy 9 states in its totality:

In determining whether a time limit for filing a claim or appeal under 25 CFR § 700.13, (a) (b), Policy, and the O.N.H.I.R. Management Manual, should be extended under a reasonable good cause standard, the Office will consider the following factors:
a. What circumstances kept applicant from making a timely request.
b. Applicant's age and education.
c. Whether applicant had a physical, mental, educational, or linguistic limitation (including no or little facility with the English language) which prevented
(continued...)

A. Laura Burnside

Laura Burnside submitted her application for relocation assistance benefits on March 17, 1982. ONHIR denied her application in a letter dated July 6, 1982; the SAC alleges that Burnside received the denial letter on July 13, 1982. The denial letter listed four reasons why Burnside was not eligible for relocation benefits, and advised her that she had 30 days to file a written appeal or request a hearing. It further advised her that the Navajo Tribe had made arrangements for her to be represented by attorney Michael Stuhff in Flagstaff at no cost to her, and listed the contact information for that attorney.

The Navajo-Hopi Legal Services Program ("NHLSP") filed an appeal on Burnside's behalf on March 19, 1990, which was nearly eight years after she received her denial letter. ONHIR rejected her appeal in a letter dated May 11, 1990 on the ground that the appeal was not filed within 60 days from the date Burnside received the denial of her application.[5]

NHLSP submitted Burnside's first request for a waiver of the appeal time limit pursuant to Revised Policy 9 on June 29, 2010, along with an affidavit from Burnside

---

[4](...continued)
applicant from filing a timely request or from understanding or knowing about the need to file a timely request for review.
    d. Whether applicant received a Notice of Determination.
    e. The length of time between applicant's receipt of Notice of Determination and the time applicant requested review.
    f. Whether O.N.H.I.R. gave applicant incorrect, incomplete, or confusing information about when and how to request administrative review.
    g. Such other circumstances as may be determined in the discretion of the O.N.H.I.R. which justify the extension of time.

[5]
        At some point, apparently sometime in 1985, ONHIR's appeal deadline was changed from 30 days to 60 days.

and a letter from her son's school, both for the purpose of explaining the circumstances as to why she did not file a timely appeal. NHLSP's waiver request letter, based on Burnside's affidavit, stated that her "good cause" for her untimely appeal included the following: that at the time of the appeal, Burnside was 59 years old; she had only attended school through the third grade, she understood limited English and never learned to read or write English, and she did not know what to do with the denial letter because she could not read it; her son, who was a high school sophomore at that time, attempted to interpret the letter for her but because of his dyslexia and unfamiliarity with legal terms he did not fully understand the letter, particularly the appeal deadline; she and her daughter went to ONHIR's Flagstaff office several times in 1981 and 1982 to inquire about the status of both of their applications, and that at one of those ONHIR visits in 1982, she was told by Joseph Shelton, who never advised her to appeal, that "the horses have run off without you," which she understood to mean that ONHIR was not going to help her and there was nothing more she could do.

ONHIR, through Christopher Bavasi, its Executive Director, replied to NHLSP's waiver request in a letter to NHLSP dated September 9, 2010. Bavasi's letter noted in part that while there may have been some basis for NHLSP arguing that Burnside was not able to meet the time limit for appeals in the summer of 1982, no justification was provided as to why the appeal was not filed until almost eight years later; he also noted that no explanation was provided as to why NHLSP delayed more than five years after Policy 9 was revised to submit Burnside's waiver request. Bavasi further noted that the case file did not contain anything suggesting that Joseph Shelton had ever met with Burnside, and that Shelton had informed him that he had never used the expression "the horses had run off" in either English or

Navajo. Bavasi additionally noted that he needed more information regarding Burnside's eligibility for benefits. Bavasi concluded the letter by stating that "I will provide NHLSP and Ms. Burnside with the opportunity to provide the information referred to in this letter and not yet provided, and if you and she decide to provide it, I will make a formal decision on the waiver request."

NHLSP then waited until May 7, 2014 to submit a second request for a Revised Policy 9 waiver on Burnside's behalf. That request contained a supplemental affidavit from Burnside, as well as affidavits from two of her children, which addressed both the reasons for her delay in appealing and her eligibility for relocation benefits. Regarding the "good cause" element for a waiver, NHLSP's second waiver request included, in part, the following supplemental information: sometime in the summer of 1982, Burnside made her brother Eugene Lewis aware of the denial letter and the two of them went to ONHIR's office in Flagstaff in the first half of August 1982; during that visit, Burnside spoke to three Navajo-speaking ONHIR employees about her denial letter, one of whom advised her that she had been denied and it was too late and another told her in Navajo that "the horse has already gone," and none of them told her she had the right to appeal even though she was still within her appeal time; in December 1982, Burnside visited ONHIR's office with her son and they were told that her file could not be found, and her son heard an ONHIR employee tell his mother at that visit that "the horses had already left," and that during another ONHIR visit by Burnside and her daughter, her daughter heard Joseph Shelton tell her mother in Navajo that "the horses have run off without you."

ONHIR, through Director Bavasi, denied the waiver request in a letter dated July 24, 2014. Bavasi stated in the denial letter that "given the provisions of ONHIR

Policy Memorandum No. 9 (Revised) of February 7, 2005 and the extensive delay in seeking and pursuing such a waiver, the waiver request is denied." At the conclusion of the letter, he summarized that the waiver request was being denied because "[t]aken as a whole, there are insufficient grounds to grant the requested relief."

In discussing the reasons for the denial, Bavasi noted in the denial letter that Burnside's first waiver request was filed more than twenty years after her benefits application was denied. Bavasi further stated in the denial letter as follows:

> The [first waiver] request was supported by documents attesting to the fact that the Burnside household had limited English fluency. The 2010 letter also suggested that Ms. Burnside's brother Eugene Lewis was not available the day the denial letter was received to interpret it for her and further suggested that at some time in 1982 Ms. Burnside had visited NHIRC and been told by Joseph Shelton - with a Navajo expression about the horses having run off - that it was then too late to file an Appeal.
>
> On September 9, 2010 I responded to NHLSP and declined to grant the requested waiver but offered NHLSP the opportunity to provide additional information in several areas. Nothing was received from NHLSP in response to my letter for more than 3½ years. In my letter I also explained that in discussions with Joseph Shelton he denied ever using any expression about "horses having already run off."
>
> Your May 2014 letter states that Ms. Burnside did consult with her brother Eugene Lewis and he advised her to travel to Flagstaff to meet with "ONHIR" (NHIRC) and that she and her brother did so. The 2010 NHSLP letter made no such claim. The 2014 letter refers to an early August 1982 trip to NHIRC in Flagstaff, while the 2010 NHLSP letter makes no such claim.
>
> (I also note there is no document from Eugene Lewis supporting his sister's waiver request and there is no explanation of why Ms.

Burnside and her brother did not meet with Michael Stuhff, Esq. [the attorney named in the July 1982 denial letter as being the Flagstaff attorney that the tribe had arranged to represent Burnside] while they were in Flagstaff or why Ms. Burnside's brother did not simply write an Appeal letter for her to sign.)

While the 2010 NHLSP letter made no claim about Ms. Burnside speaking with three male NHIRC employees, the 2014 letter and affidavits make such a claim. There are credibility issues with "additional information" which surfaces for the first time more than 31 years after the relevant time period and more than three years after NHLSP's 2010 letter.

NHLSP offers no reason why it waited more than five years to seek a waiver after the 2005 revision in Policy Memorandum No. 9 or why it took NHLSP more than 3½ years to respond to my 2010 letter and timeliness is one of the factors specified in the Policy Memorandum to be considered when a decision is made to grant or not grant a waiver.

NHLSP sent a letter to the ONHIR dated July 24, 2014, wherein it requested that ONHIR issue a Final Agency Action ("FAA") notice to Burnside. Someone apparently with ONHIR sent Burnside's NHLSP attorney an email on August 12, 2014, which stated that "[i]f neither you nor your client have any additional information that you want Chris [Bavasi] to consider, please let me know and Chris will issue the FAA letter you have requested." ONHIR sent the requested FAA letter regarding Burnside's waiver request to NHLSP on August 14, 2014.

B. Polly Semallie

Polly Semallie submitted her application for relocation assistance benefits to ONHIR on March 27, 1980. Between June 1982 and December 1984, ONHIR sent four letters to Semallie requesting additional information regarding her eligibility for benefits. ONHIR sent Semallie a letter in March 1985 stating that her application

was being denied because she had not responded to ONHIR's requests for additional information. The letter advised Semallie that she had thirty days to request an explanatory conference regarding the reasons for her application denial or to request a hearing. She was further advised that the Navajo Tribe had arranged for her to be represented by NHLSP and gave her the necessary contact information. The SAC alleges that Semallie received the denial letter nine days after it was dated.

The Navajo-Hopi Development Office, part of the Navajo Nation government, filed a written appeal to ONHIR for Semallie on May 14,1987, which was more than two years after she received her denial letter. ONHIR rejected her appeal a few days later as being untimely.

NHLSP filed a Revised Policy 9 request for a waiver of the appeal time limit on Semallie's behalf on March 25, 2015. The request contained information concerning both why Semallie did not timely file an appeal and her eligibility for relocation benefits, and included an affidavit from Semallie and documents from ONHIR's file of her grandmother who had been found eligible for relocation benefits. Regarding Semallie's "good cause" for requesting a waiver of the appeal deadline, NHLSP's request letter, based on Semallie's affidavit, stated in part as follows: that when Semallie received the appeal denial letter in March 1985, she had only five years of schooling, she was living in a house with no telephone and no vehicle, she was unable to read and understand written English and spoke only limited English and her lack of English ability made it impossible for her to understand the denial letter or any of the four previous letters ONHIR had sent her, and none of the family members she then lived with could read or understand written English and were unable to understand the denial letter. NHLSP's waiver request letter argued that

Semallie met factor 3(c) of Revised Policy 9 because she had a "physical, mental, educational, or linguistic limitation" that resulted in her inability to understand the ONHIR's communications.

Both Semallie's affidavit and NHLSP's request letter stated that Semallie did not know about seeking legal assistance until the spring of 1987 when her niece told her about NHLSP and she sought assistance from NHLSP in May 1987, and both the affidavit and the request letter stated that NHLSP filed Semallie's appeal for her.[6]

ONHIR, through Director Bavasi, denied Semallie's waiver request on April 15, 2015. Bavasi's denial letter, which acknowledged that the waiver request was made pursuant to Revised Policy 9, stated in relevant part as follows:

> I accept all the statements in your March 25, 2015 letter about Ms. Semallie's education and 1985 family situation as true, but, as your letter makes clear, the [NHLSP] has been counsel for Ms. Semallie for more than 27 years. Moreover, Policy Memorandum No. 9 (2005 revision) has been in effect for over 10 years and yet no such waiver request was previously made.
>
> With the passage of time, memories fade and witnesses die and evidence that would have been available to Ms. Semallie, NHLSP and ONHIR is no longer in existence.
>
> Given the failure to submit a waiver request for many years after such a request could have been submitted and the consequences of that failure in terms of the ability for an accurate decision to be made on such an appeal, I cannot grant the waiver request[.]

Pursuant to NHLSP's request, the ONHIR sent a letter to NHLSP on April 29,

---

[6]
     The CAR shows that the appeal was actually filed on Semallie's behalf by the Navajo-Hopi Development Office, not NHLSP.

     However, the CAR also shows that NHLSP was representing Semallie, at the very latest, by the end of November 1988 when NHLSP sent ONHIR a signed authorization for the disclosure of Semallie's confidential information.

2015, wherein it stated that Bavasi's waiver denial letter constituted ONHIR's final agency action on Semallie's waiver request.

C. Pauline White

Pauline White, who is Semallie's sister, submitted her application for relocation assistance benefits on September 9, 1981. Between mid-October and late November 1984, ONHIR sent at least two letters to White seeking additional information regarding her eligibility for benefits. ONHIR sent White a letter dated March 12, 1985 stating that her application was being denied because she had not responded to ONHIR's letters seeking additional information; the SAC alleges that White received the denial letter on March 18, 1985. The letter advised White that she had thirty days to request an explanatory conference regarding the reasons for her application denial or to request a hearing. She was further advised that the Navajo Tribe had arranged for her to be represented by NHLSP and gave her the necessary contact information.

NHLSP submitted a notice of appeal on White's behalf on June 12, 1985, which was three months after she received her denial letter. ONHIR sent NHLSP a letter dated August 13, 1985 stating that White's appeal was rejected because it was not filed within 60 days from the date White received her notice of the denial of her application for benefits.

White filed a second application for relocation benefits on April 6, 2009. ONHIR denied the application in a letter dated April 14, 2009 stating that she had failed to timely seek review of her initial denial and ONHIR had closed her case. White did not appeal this second denial.

NHLSP filed a Revised Policy 9 request for waiver of the appeal time period on White's behalf on March 25, 2015. The request contained information concerning

both the "good cause" for her untimely appeal and her eligibility for relocation benefits, and included an affidavit from White. Regarding the waiver standard, NHLSP's letter, based on White's affidavit, stated in part as follows: that White had never attended school and had no formal education; she could not speak, understand, read or write English aside from being able to sign her name; at the time she received the denial letter, she was living in an isolated area with no telephone and her family had no vehicle, none of the family members she lived with were able to read or understand the denial letter as none could read English; her inability to speak or read English made it impossible for her to understand the denial letter or any of the previous letters sent to her by ONHIR seeking additional information about her eligibility, and she did not know about seeking help with her application for relocation benefits until she was told about NHLSP and she sought assistance from NHLSP sometime in June 1985.

ONHIR, through Director Bavasi, sent NHLSP a letter dated April 17, 2015 which denied White's request for a late appeal waiver. Bavasi's letter, which noted that the waiver request was made pursuant to Revised Policy 9, stated in part:

> I accept all the statements in your March 25, 2015 letter about Ms. White's lack of a formal education and her 1985 family situation as true, but, as your letter makes clear, the NHLSP has been counsel for Ms. White for almost 30 years. Moreover, Policy Memorandum No. 9 (2005 revision) has been in effect for over 10 years and yet no such waiver was previously made. (Even after Ms. White filed a "*Herbert*" Application which was rejected on April 14, 2009 and NHLSP received a copy of the rejection letter.)
>
> With the passage of time, memories fade and witnesses die and evidence that would have been available to Ms. White, NHLSP and ONHIR is no longer in existence.
>
> Given the failure to submit a waiver request for many years after

- 12 -

such a request could have been submitted and the consequences of that failure in terms of the ability for an accurate decision to be made on such an appeal, I cannot grant the waiver request you submitted on behalf of Pauline White.

Pursuant to NHLSP's request, ONHIR sent a letter to NHLSP on April 29, 2015, wherein it stated that Bavasi's waiver denial letter constituted ONHIR's final agency action on White's waiver request.

Discussion

I. APA-Related Cross-Motions

The APA "sets forth the full extent of judicial authority to review executive agency action for procedural correctness[.]" F.C.C. v. Fox Television Stations, Inc., 556 U.S. 502, 513 (2009). The APA requires a reviewing court to uphold an agency's final action unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). The arbitrary and capricious standard is "highly deferential, presuming the agency action to be valid[.]" Kern County Farm Bureau v. Allen, 450 F.3d 1072, 1076 (9th Cir.2006); accord, San Luis & Delta-Mendota Water Authority v. Locke, 776 F.3d 971, 994 (9th Cir.2014) ("The arbitrary or capricious standard is a deferential standard of review under which the agency's action carries a presumption of regularity.") Although the reviewing court's inquiry must be searching and careful in order to determine if the agency's decision was based on relevant factors and does not constitute a clear error of judgment, the standard of review is ultimately a narrow one and the reviewing court may not substitute its own judgment for that of the agency. Kern County Farm Bureau, at 1076; San Luis & Delta-Mendota Water Authority, at 994; Fence Creek Cattle Co. v. U.S. Forest Service, 602 F.3d 1125, 1132 (9th Cir.2010). Under this

standard, the reviewing court is required to affirm the agency action "if a reasonable basis exists for its decision." <u>Kern County Farm Bureau</u>, at 1076; *accord*, <u>San Luis & Delta-Mendota Water Authority</u>, at 994 (The reviewing court must sustain the agency action under this standard "if the agency has articulated a rational connection between the facts found and the conclusions made.") An agency action is arbitrary and capricious "if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." <u>Motor Vehicle Manufacturers Ass'n of U.S., Inc. v. State Farm Mutual Automobile Ins. Co.</u>, 463 U.S. 29, 43 (1983).

    In the APA context, summary judgment is the mechanism through which the reviewing court determines as a matter of law whether the evidence in the administrative record reasonably permitted the agency to make the decision it did. <u>Occidental Engineering Co. v. I.N.S.</u>, 753 F.2d 766, 770 (9th Cir.1985). The Court concludes that the plaintiffs have failed to create any question of fact that would cast doubt upon the reasonableness of ONHIR's waiver denials.

    The plaintiffs allege in their APA claim in the SAC that ONHIR's denials of their waiver requests were "arbitrary, capricious, an abuse of discretion, not supported by substantial evidence and ... not in accordance with applicable law" because ONHIR inconsistently applied its Revised Policy 9. The plaintiffs raise two basic, inter-related arguments in their APA-related memoranda: that ONHIR's waiver denials were arbitrary and capricious because ONHIR had previously granted waiver requests from other applicants in factually similar cases, and because ONHIR disregarded the plain language of Revised Rule 9 by not considering all of its seven

factors and by relying on factors not included in the revised policy, *i.e.*, the length of time between when the revised policy went into effect in February 2005 and when the waiver requests were filed, and whether the plaintiffs were represented by counsel.

As a general principle, an administrative agency must apply the same basic standard of conduct to all parties before it and an agency's decision may be considered arbitrary if the decision is inconsistent with its other findings and it fails to explain the discrepancy. <u>Akee v. Office of Navajo & Hopi Relocation</u>, 907 F.Supp. 315, 319 (D.Ariz.1995).   In support of their disparate treatment argument, the plaintiffs attached as exhibits to their summary judgment motion the waiver-related documentation for nonparties Phillip and Jeanita Lane, Annie Clark, Duffy Jim Bedonie, and Peter Furcap, all of whom had their Revised Policy 9 waiver requests granted by ONHIR, as well as the waiver-related documentation for nonparties Ethel Nez and Paul Jones, both of whom had their Revised Policy 9 waiver requests denied.

ONHIR objects to the admission of this submitted evidence since none of it is part of the CAR, and argues that the Court has no jurisdiction to consider issues pertaining to these other waiver applicants since it is undisputed that this extra-record evidence and the plaintiffs' disparate treatment arguments pertaining to that evidence were not raised by the plaintiffs at the administrative level.  ONHIR has submitted its own extra-record evidence in the form of a declaration from Director Bavasi which explains how ONHIR interprets its Revised Policy 9 and which distinguishes the plaintiffs' waiver decisions from those of the other non-party applicants submitted by the plaintiffs; ONHIR requests the Court to consider Bavasi's declaration only if it considers the plaintiffs' extra-record evidence.

1       "Generally, judicial review of an agency decision is limited to the administrative

2 record on which the agency based the challenged decision." <u>Fence Creek Cattle</u>

3 <u>Co.</u>, 602 F.3d at 1131. The purpose of this rule is to ensure that the reviewing court

4 affords sufficient deference to the agency's decision. <u>San Luis & Delta-Mendota</u>

5 <u>Water Authority</u>, 776 F.3d at 994. The Ninth Circuit allows expansion of the APA

6 administrative record by the reviewing court only in four narrowly construed

7 circumstances: (1) when the supplementation is necessary to allow the court to

8 determine if the agency considered all factors and explained its decision; (2) when

9 the agency relied on documents not in the record; (3) when the supplementation is

10 needed to explain technical terms or complex subjects; or (4) when the plaintiffs

11 have shown bad faith on the part of the agency. <u>Fence Creek Cattle Co.</u>, 602 F.3d

12 at 1131.

13       The plaintiffs contend that their additional evidence was not submitted as

14 extra-record evidence, but as support for their legal argument that the ONHIR failed

15 to follow its own Revised Policy 9, its prior interpretations of that policy, and its past

16 decisions under that policy. For purposes of resolving the parties' APA-related

17 motions, the Court does not consider this to be a relevant distinction. The plaintiffs'

18 submitted evidence is extra-record evidence, and the Court deems that evidence to

19 be directed at the first exception, which is that supplementation of the record is

20 necessary to determine if ONHIR considered the relevant factors and explained its

21 decision. Although this exception permits a reviewing court to consider extra-record

22 evidence to "develop a background against which it can evaluate the integrity of the

23 agency's analysis[,]" *i.e.,* to help the court understand whether the agency's decision

24 was arbitrary or capricious, the exception does not permit the court to use the extra-

25 record evidence to judge the correctness or wisdom of the agency's decision. <u>San</u>

26

Luis & Delta-Mendota Water Authority, 776 F.3d at 993.

The Court concludes both that the plaintiffs have not met their "heavy burden" to show that the additional submitted documents are necessary for the Court to adequately review ONHIR's waiver denials, Fence Creek Cattle Co., 602 F.3d at 1131, and that the administrative record before it is sufficient to conduct its APA review. Nevertheless, even if the Court were to consider the plaintiffs' extra-record evidence, the Court cannot conclude that this evidence is sufficient to show that ONHIR's denials of the plaintiffs' waiver requests were patently inconsistent with other ONHIR waiver-related decisions.

The plaintiffs contend that ONHIR's resolution of the extra-record nonparty waiver requests demonstrated how it interpreted and applied the factors listed in Paragraph 3 of Revised Policy 9, and that ONHIR should have used the same rationale for resolving the plaintiffs' waiver requests; they further contend that two of these other nonparty applicants, Annie Charley and Duffy Jim Bedonie, had factually similar cases to the plaintiffs in that they, like the plaintiffs, had little or no formal schooling and were traditional Navajo speakers who did not speak, read, understand or write English, yet ONHIR granted their waiver requests.

The Court rejects the plaintiffs' limitation on the scope of ONHIR's discretion, and concludes that ONHIR did not act arbitrarily or capriciously by evaluating the plaintiffs' waiver requests by focusing on Revised Policy 9-related factors it considered, in the plaintiffs' individual cases, to be relevant to the demonstration of good cause for the extension of the appeal time limit. ONHIR's authority to determine whether a waiver should be granted is governed by 25 C.F.R. § 700.13, which provides ONHIR with the broad discretion to waive the appeal time limit, on a case by case basis, if it concludes that the waiver is "in the best interest of

individual Indian applicants, the Commission, and the United States." This governing regulation places no other limitation on ONHIR's discretion. Revised Policy 9 was clearly not intended to be some new binding rule of substantive law narrowly limiting ONHIR's discretion, notwithstanding that it provides that ONHIR "will consider" seven factors in exercising its discretion. That the intent of the revised rule is merely to give guidance to ONHIR in the exercise of its regulatory discretion is made clear given its statement that ONHIR "may consider" requests for waiver of the appeal time limit "on a case by case basis" if it determines that the applicant has shown "reasonable good cause." Revised Policy 9 is simply a statement of agency policy. *See* Sacora v. Thomas, 628 F.3d 1059, 1069 (9th Cir.2010) (Court noted that an agency directive that provides guidance to agency officials regarding their discretionary power while preserving their flexibility and their opportunity to make individualized determinations constitutes a general statement of policy.) As a general rule, policy statements are not binding on an agency and "the agency retains the discretion and the authority to change its position .. in any specific case." Ass'n of Flight Attendants-CWA v. Huerta, 785 F.3d 710, 716 (D.C.Cir.2015). Because ONHIR retains its broad discretion to resolve waiver requests on a case by case basis using the factors provided by Revised Rule 9 as guidance, the Court agrees with ONHIR that its informal, nonpublished decisions in other waiver cases do not create binding precedent. *See* Laughter v. Office of Navajo and Hopi Indian Relocation, 2017 WL 2806841, at *4 (D.Ariz. June 29, 2017) (Court rejected NHLSP's argument that agency decisions in other relocation benefits cases constitute binding precedent).

In any case, the cases of the plaintiffs and those of the nonparties are at best only partially factually similar, and ONHIR cannot be said to have disregarded its

own precedents and policies in the plaintiffs' cases by the manner in which it resolved those other cases because the nonparty cases were not identically resolved among themselves. This is evident from the following: ONHIR's letter accepting the late appeal of Philip and Jeanita Lane in November 2005 contained no reasoning whatsoever, much less a discussion of any Revised Policy 9 factors; ONHIR's letter granting the waiver request of Annie Charley in February 2006 also set forth no reason, although an ONHIR memo discussing the case noted that "Policy No. 9 recognizes the applicant's age, educational and linguistic limitations among the factors to be considered in determining whether to grant a Waiver."; ONHIR's letter granting the waiver request of Duffie Jim Bedonie in February 2006 stated that "this Waiver has been granted based solely upon your client's inability to read, write, or speak the English language as well as her lack of education, in accordance with Items 3(b) and 3(c) of ... Revised Policy Memorandum No. 9[.] ... No other factors alleged in your letter were considered in making this decision."; ONHIR's letter denying Ethel Nez's waiver request in June 2007, which noted that she had not shown reasonable good cause for a waiver, did conclusorily go through each Paragraph 3 factor, including noting as to factor 3(e), which considers the "length of time between applicant's receipt of Notice of Determination and the time applicant requested review," that "Applicant's Petition for Waiver was received approximately 30 months after the Denial."; ONHIR's letter denying the waiver request of Paul Jones in September 2009, which assumed the truth of the factual assertions presented in the waiver request, noted, without specifying any particular Revised Policy 9 factor, that his failure to timely appeal was not excusable because he had the intellectual capacity to understand the denial letter and had no illness or other circumstances beyond his control that prevented him from taking timely action

1    to appeal; and ONHIR's letter granting Peter Furcap's waiver request in July 2014

2    noted, without specifying any particular Revised Policy 9 factor, that an improper

3    delivery of his denial letter may have caused his late appeal.

4         The Court also rejects the plaintiffs' assertion that ONHIR was obligated by

5    Revised Policy 9 to consider each of the Paragraph 3 factors and could not consider

6    any other factors in determining whether there was good cause to grant their waiver

7    requests.  Nothing in 25 C.F.R. § 700.13, the governing regulation, or in Revised

8    Policy 9, mandates that the Paragraph 3 factors constitute an exhaustive list of

9    relevant factors, which is made clear by factor 3(g), which provides that ONHIR will

10   consider "[s]uch other circumstances as may be determined in the discretion of the

11   O.N.H.I.R. which justify the extension of time[,]" and neither requires that ONHIR

12   must assess each individual factor or must grant each factor identical weight, nor do

13   they direct that a waiver must be granted if an applicant meets one or more of the

14   listed factors.

15        In any case, the plaintiffs' argument that Revised Policy 9 does not permit

16   ONHIR to consider how long it took them to submit a waiver request after the

17   implementation of the revised rule or to consider that they had been represented by

18   counsel, or at least had access to counsel, for years prior to submitting their waiver

19   requests is simply unpersuasive. At the very least, factor 3(a), which looks to "[w]hat

20   circumstances kept applicant from making a timely request[,]" is broad enough to

21   reasonably permit ONHIR to focus on the timeliness of the waiver requests, which

22   is in effect an application of the equitable principle of laches.

23        As the waiver denials point out, Burnside waited over five years after Revised

24   Policy 9 was implemented to request a waiver through NHLSP, notwithstanding that

25   NHLSP had first represented her before ONHIR fifteen years prior to the policy's

26

revision date and twenty years prior to her waiver request. Semallie waited ten years after the revised policy's implementation notwithstanding that NHLSP had first represented her some eighteen years before the revision date and some twenty-eight years before her waiver request. White also waited ten years after the revised policy's implementation notwithstanding that NHLSP had first represented her over nineteen years prior to the policy's revision and almost thirty years before her waiver request.

These long delays alone distinguish the plaintiffs from the nonparty applicants who were granted waivers, since the waiver requests of those applicants were made in a considerably shorter period after the implementation of Revised Policy 9: the Lanes filed their waiver request some six months after Revised Policy 9 went into effect; Annie Clark filed her waiver request some eleven months after the revised policy was implemented; and Duffy Jim Bedonie filed her waiver request one year after the revised policy was implemented.[7]

Even if ONHIR solely relied on only one of the factors in Revised Policy 9, and the plaintiffs' denial decisions note that Director Bavasi considered other policy factors such as the plaintiffs' lack of knowledge of English, that does not make the denials procedurally improper given ONHIR's broad discretion. In light of the APA's highly deferential standard of review, the Court concludes that a reasonable basis exists in the CAR for the denials of the plaintiffs' waiver requests.

---

[7]

     Peter Furcap, the other nonparty applicant whose waiver request was granted, does not fit into this group because his appeal was denied more than eight years after Revised Policy 9 went into effect and he filed his waiver request less than eight months after his appeal was denied.

II. ONHIR's Due Process-Related Motion

Also pending before the Court is Defendant's Motion for Summary Judgment (Constitutional Claims) (Doc. 57), which pertains to the plaintiffs' Second Claim for Relief, entitled "Due Process," in their SAC.[8]  Having considered the parties' memoranda in light of the relevant record, and the Court's resolution of the plaintiffs' APA claim, the Court finds that the motion should be granted because there is no genuine issue of material fact and ONHIR is entitled to summary judgment on this claim as a matter of law.[9]

The plaintiffs' constitutional claim alleges that ONHIR violated their due process rights "through its failure to follow its own regulations, guidelines, and/or policies" inasmuch as it denied their waiver requests "without analyzing the seven 'good cause' factors of Policy 9, by adding factors not included in the revised Policy 9, by claiming evidence supporting Plaintiffs' requests no longer exists or is available, and without addressing the evidence attached to those Requests." ONHIR argues in part, and the Court agrees, that the due process claim fails as a matter of law because the plaintiffs do not have a cognizable property interest in a discretionary waiver of the appeal deadline.

The plaintiffs state that they are alleging a procedural due process claim.

---

[8]

ONHIR's motion also sought summary judgment on the plaintiffs' Third Claim for Relief in the SAC, which alleged a violation of their equal protection rights, but the parties subsequently jointly moved to dismiss this claim.

[9]

Although the plaintiffs have requested oral argument as to this motion, the Court concludes that no oral argument is necessary because the parties have had an adequate opportunity to provide the Court with the necessary evidence and legal memoranda and oral argument would not aid the decisional process. Partridge v. Reich, 141 F.3d 920, 926 (9th Cir.1988).

Such a claim is analyzed under a two-step process: (1) whether the plaintiffs have established the existence of a liberty or property interest which has been subject to government interference; and (2) whether the plaintiffs have established that the procedures attendant upon that deprivation were constitutionally insufficient. United States v. Juvenile Male, 670 F.3d 999, 1013 (9th Cir.2012). The Court does not reach the second element because the plaintiffs have not made their threshold showing that they were deprived of a constitutionally protected property interest.[10]

The plaintiffs argue that the property interest underlying their due process claim is their right to the application of Revised Policy 9's good cause standard as it is specifically defined by seven mandatory factors. The Court disagrees. A constitutionally protected interest in a procedural requirement is created "only if the procedural requirements are intended to be a significant substantive restriction on decision making. If the procedures required pose no significant limitation on the discretion of the decision maker, the expectation of a specific decision is not enhanced enough to establish a constitutionally protected interest in the procedures." Clemente v. United States, 766 F.2d 1358, 1365 (9th Cir.1985)(internal quotation marks and alteration omitted); *accord*, Town of Castle Rock, Colo. v. Gonzales, 545 U.S. 748, 756 (2005) (Supreme Court noted that its cases "recognize that a benefit is not a protected entitlement if government officials may grant or deny it in their discretion."); Gerhart v. Lake County, Mont., 637 F.3d 1013, 1019 (9th Cir. 2011) (In order to have a constitutionally protected property interest, the law or regulation creating a legitimate claim of entitlement must impose significant

---

[10]

Because the Court is denying the plaintiffs' due process claim as a matter of law on the basis that they do not have a protected property interest, the plaintiffs' request for discovery on their due process claim pursuant to Fed.R.Civ.P. 56(d) is moot.

limitations on the discretion of the decision maker, such as requiring that a benefit be issued once certain requirements are satisfied.) As the Court has already concluded, the regulation governing ONHIR's authority to grant a waiver of the appeal time limit, 25 C.F.R. §700.13, grants ONHIR broad discretion. Although Revised Policy 9, the policy statement guiding ONHIR's use of that broad discretion, does state in its Paragraph 3 that ONHIR "will consider" seven factors, which the Court has found to be a nonexhaustive list of factors, in determining whether a waiver applicant has met the reasonable good cause standard, the phrase "will consider" in and of itself does not impose any constitutionally significant restriction on ONHIR's discretionary authority to consider waiver requests since the revised policy, read as a whole, simply does not mandate that a waiver must be granted once certain requirements are met. *See* Doyle v. City of Medford, 606 F.3d 667, 672-73 (9th Cir.2010) (Court stated that a "regulation granting broad discretion to a decision-maker does not create a property interest[,]" and that while a statute "may create a property interest if it mandates a benefit when specific non-discretionary factual criteria are met[,]" it does so only if it imposes "particularized standards or criteria that *significantly* constrain.") (Emphasis in original). Therefore,

IT IS ORDERED that Plaintiffs' Motion for Summary Judgment (Doc. 48) is denied.

IT IS FURTHER ORDERED that Defendant's Cross-Motion for Summary Judgment (Doc. 53) is granted and that the plaintiffs' First Claim for Relief (APA Violations) in their Second Amended Complaint for Judicial Review (Doc. 19) is dismissed, and that the defendant's administrative decisions denying the plaintiffs' requests for waiver of the appeal time limit are affirmed.

IT IS FURTHER ORDERED that Defendant's Motion for Summary Judgment

(Constitutional Claims) (Doc. 57) is granted and that the plaintiffs' Second Claim for Relief (Due Process) in their Second Amended Complaint for Judicial Review (Doc. 19) is dismissed.

IT IS FURTHER ORDERED that Plaintiffs' Motion to Stay the Constitutional Claims Briefing Schedule and Defer Ruling on Such Claims (Doc. 61) is denied.

IT IS FURTHER ORDERED that the parties' Stipulated Motion to Dismiss Plaintiffs' Third Claim for Relief (Equal Protection) (Doc. 72) is granted and that the plaintiffs' Third Claim for Relief (Equal Protection) in their Second Amended Complaint for Judicial Review (Doc. 19) is dismissed.

IT IS FURTHER ORDERED that the Clerk of the Court shall enter judgment in favor of defendant Office of Navajo and Hopi Indian Relocation accordingly.

DATED this 27th day of September, 2017.

Paul G. Rosenblatt
United States District Judge